# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

KATHRYN ANN BROWN,        )
                                   )
            **Movant,**      )
                                   )
**vs.**                             )      **Case No. 05-00075-04-CV-W-GAF**
                                 )      **Crim. No. 00-00431-04-CR-W-GAF**
**UNITED STATES OF AMERICA,**  )
                                 )
         **Respondent.**    )

## ORDER

On October 30, 2000, movant was charged in a criminal complaint in the Western District of Missouri with conspiracy to manufacture methamphetamine in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A) and 846. On November 28, 2000, a five-count indictment was returned by a grand jury sitting in the Western District of Missouri against movant and three others and the complaint was dismissed. Movant was named in three of the five counts and charged as follows: (1) conspiracy to distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in an amount of five hundred (500) grams or more, contrary to the provisions of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A), all in violation of Title 21, United States Code, Sections 846; and (2) conspiracy to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in an amount of five (5) kilograms or more, contrary to the provisions of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A), all in violation of Title 21, United States Code, Section 846; and (3) maintaining a place for the purpose of

storing, distributing, and using methamphetamine, a Schedule II controlled substance, contrary to the provisions of Title 21, United States Code, Sections 856(a)(1) and 856(b).[1]

Benjamin N. Casad was initially appointed as counsel for defendant. During the course of preparing for trial, defendant Movant filed a number of motions, including: a motion to suppress statements made to law enforcement, filed on January 16, 2001 and ultimately denied on June 26, 2001; a motion for a psychiatric evaluation, filed on January 30, 2001 and granted on February 7, 2001; and a motion for new counsel, filed on March 20, 2001 and granted on April 12, 2001 appointing Scott W. Turner as counsel. Ultimately, the Court found the defendant fit to stand trial.

On July 30, 2001, Movant waived her right to trial and entered into a written plea agreement with the government. As part of that plea agreement, Movant plead guilty to Count One of the Indictment charging her with conspiracy to distribute methamphetamine. The plea agreement provided for no specific guideline level or sentence, instead permitting the parties to argue any guidelines issues at sentencing. The plea agreement granted the defendant a two-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. Movant appeared before this Court, where she entered a plea of guilty to Count One. At Movant's guilty plea hearing, the court asked Movant if she had reviewed the plea agreement and understood its terms. Movant acknowledged that she had read the plea agreement and acknowledged that she understood the provisions of the plea agreement. Movant affirmed that she had taken sufficient time to discuss her case and its consequences with counsel, that counsel had answered her questions, and that she was satisfied with counsel's representation. Movant

---

[1] Movant's arguments are frivolous, unsupported and/or refuted by the record, and without basis under the law. Much of the government's brief is adopted without quotation noted.

2

specifically acknowledged that she understood and voluntarily agreed to the express waiver of her right to appeal. Movant confirmed her signature on the plea agreement. The Court accepted Movant's guilty plea and ordered a pre-sentence investigation report.

The pre-sentence investigation report (PSR) was completed and Movant filed objections to some of the findings in the PSR. On May 1, 2002, a sentencing hearing was held before the undersigned. Movant's objections to the quantity of drugs attributed to her were denied. Movant's motion for a reduction for being a minor participant in the conspiracy was denied, as well as her objection relative to receiving an additional one-level reduction for timely acceptance of responsibility. However, Movant's objection to receiving two additional criminal history points for being in escape status was granted, which resulted in her criminal history score being reduced by two points, for a total of thirteen; or Category VI. The Court concluded that Movant's sentencing guideline range was 324 to 405 months imprisonment based upon a total offense level of 36 and a Criminal History Category of VI. Movant was sentenced to the low end of the applicable guidelines range, or 324 months imprisonment.

Movant subsequently appealed *pro se*. Movant's counsel requested permission to withdraw from the case and filed an *Anders* brief. In the brief of the appellant, through counsel before withdrawing, Movant raised one issue: whether this Court erred in placing Movant in Criminal History Category VI. In her *pro se* supplemental brief, Movant raised four issues as follows: Movant claimed that she received ineffective assistance of counsel; that the sentencing court had miscalculated the drug levels and type; that drug amounts attributed to her in the PSR were in error; and that her plea was not made voluntarily and knowingly due to mental disease or defect. On July 30, 2003, the Eighth Circuit

3

summarily affirmed the district court. Movant sought rehearing, which was denied on September 15, 2003. Subsequently, Movant filed a petition for certiorari to the Supreme Court, which was denied on January 20, 2004.

Movant now seeks to have her guilty plea set aside and the setting of trial by jury, or, alternatively, her sentence vacated, resulting in her immediate release. Movant has asserted four grounds for relief in her Section 2255 motion: (1) her 5th and 14th Amendment rights against self-incrimination were violated; (2) her counsel was ineffective, contrary to her 6th and 14th Amendment rights; (3) the punishment was contrary to her rights under the 8th Amendment; and (4) her due process rights were violated.[2] In support of each of those grounds, she details numerous specific claims.

The vast majority of Movant's claims herein fail to adequately state any prejudice in regard to Movant's guilt or sentence. Further, Movant has failed to adequately demonstrate how the alleged errors fundamentally affect her constitutional rights.

Sufficiency of the Evidence

Movant makes numerous claims related to the sufficiency of the evidence in regard to her conviction.

(A) In Ground 1, Movant claims that the evidence used against her in court included a statement by Jackson County Drug Task Force Officer Jeff Seever that she had confessed to the crime and that such statement was not witnessed or video-taped. Movant further states that the prosecution used a statement and a video that was evidence from a "Kansas warrant that was never tried." Movant

---

[2]In the context listed, the 14th Amendment only applies to state criminal prosecutions, not to federal prosecutions.

4

further states that she was "forced to act as an agent to set up a co-defendant making [her] part of a conspiracy against herself." Movant fails to state how she was prejudiced by these claims but stylizes the claims as violations of her constitutional rights against self-incrimination.

Law enforcement officers were investigating co-defendant Melissa Bilyeu's residence as a suspected methamphetamine laboratory. Law enforcement officers had previously conducted three trash pulls at the residence and found items that tested positive for methamphetamine residue. On April 5, 2000, law enforcement officers executed a search warrant at the residence. Movant was at the residence during the search, in possession of a large quantity of cash and drugs, including heroin and crack cocaine. Immediately following her arrest, Movant was cooperative with investigators. Movant was interviewed by Detective Brian Hampton of the Overland Park, Kansas Police Department on April 6, 2000, hours after the execution of the search warrant. She signed a waived of her *Miranda* rights and gave a statement to Detective Hampton during which she confessed. That statement was recorded on video and that video-tape was ultimately entered into evidence during Movant's suppression hearing. On August 31, 2000, Movant was interviewed for a second time; this time by Detective Jeff Seever of the Jackson County Drug Task Force. Movant again waived her *Miranda* rights and provided a statement. That statement was not video-taped. During both interviews, Movant provided details concerning her methamphetamine and cocaine distribution activities. She stated that she had been distributing drugs for Debra Haynes, one of the indicted co-conspirators in the instant criminal case. During her statements, Movant additionally admitted that she used a gram of heroin daily. Movant made several recorded phone calls in an attempt to arrange a narcotics transaction with Haynes. Shortly after her initial statements, Movant cased cooperating with investigators. Instead,

5

Movant determined to challenge the charges against her in a criminal trial. In preparation for trial, Movant filed a motion to suppress both statements she made to investigators. Movant's motion to suppress was denied.

These claims collectively appear to be an attempt to re-litigate the motion to suppress Movant's statements to law enforcement officers. However, the evidence Movant challenges was never used against her during trial because, ultimately, Movant plead guilty. It is that guilty plea which resolved the case and resulted in the judgment of guilt against Movant, not the testimony of Detective Seever. Detective Seever did testify in the motion to suppress hearing, but never testified during the change of plea or sentencing hearings.

Movant effectively waived her right to challenge the suppression issue and the sufficiency of the evidence when she waived her right to a trial. These rights were explained to her in detail by the Court during the change of plea colloquy. The Court informed Movant that she had the right to maintain her plea of not guilty, that the government would then have to prove the evidence against her, and that she would have the right to cross-examine government witnesses and present evidence on her behalf. The Court further explained that by changing her plea to guilty, she was forfeiting those rights. Movant's written plea agreement detailed the same waiver of rights. The forfeiting of these rights by pleading guilty is fatal to any claim regarding the sufficiency of the evidence.

Even if Movant was arguing that the error was in the district court's denial of the suppression motion, she nonetheless failed to properly preserve any claim regarding the failed attempt to suppress the evidence. Movant did not enter a conditional plea, thereby allowing her to appeal the denial of the suppression motion to the Eighth Circuit. Despite being barred by the plea agreement from appealing

6

her plea or sentence, Movant still sought review by the Eighth Circuit. In that appeal, she failed to raise any issues regarding the suppression motion. She may not raise this issue now. *See Bousley v. United States*, 523 U.S. 614, 621 (1998) ("[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal") (internal citation omitted). To properly raise this issue, movant must show both "cause" for failure to raise the issue during direct appeal, and "actual prejudice" resulting from the error. *See Bousley* at 622; *United States v. Frady*, 456 U.S. 152 (1982). As to "actual prejudice," movant must show that the error "worked to [her] actual and substantial disadvantage." *Frady*, 456 U.S. at 170. This is a demanding standard; it requires the defendant to carry a burden "significantly higher" than she would be required to satisfy on direct review under the plain-error standard. *Frady*, at 167. Since Movant plead guilty, she cannot demonstrate actual prejudice with regard to evidence which was not admitted in trial because no trial was held.

Movant might argue that the evidence, particularly her confession, was used to set the drug quantities for her sentence. Movant's only substantive objection to the PSR regarding any statements were related to these drug quantities, which was denied by the Court. In Making such an argument, Movant is attempting to raise claims that have already been decided to her detriment. Unlike the suppression issue, Movant raised drug quantity determination in her appeal to the Eighth Circuit, and the appellate court summarily affirmed the district court's findings. Movant may not challenge those rulings now. "It is well-settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." *United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981). These claims are barred by the law of the case doctrine. *See United States v. Duchi*, 944 F.2d 391, 393 (8th Cir. 1991).

7

Movant repeatedly raises the fact that the second confession was not video-tape recorded. However, there is no constitutional right to electronic recording of statements. Indeed, the suppression of statements is based on the voluntary nature of the statement and proper waiver of *Miranda* rights, not whether the statement was electronically recorded. *See U.S. v. Thornton*, 177 F.Supp.2d 625, 628 (E.D. Mich. 2001) ("electronic recording is not a constitutional requirement").

(B) In ground three, claim #1, Movant states that her part in the conspiracy was receiving, not distributing, and that her distribution was never proven. However, Movant twice confessed to distribution of methamphetamine and cocaine. She plead guilty to the crime of conspiracy to distribute methamphetamine. Movant offered a colloquy at the change of plea hearing in which she admitted that she had distributed methamphetamine, objecting only to the amount of drugs she was responsible for distributing. This claim is without merit.

(C) In ground four, movant again raises several claims which seem to be directed at the sufficiency of the evidence. In claim #1, movant challenges the sufficiency of the evidence that formed the basis of the initial complaint. In the second claim, she challenges the Grand Jury indictment on the same basis. Movant states that the August 1999 confession to Detective Seever was false because she didn't actually confess. This ignores her earlier confession to Detective Hampton entirely as well as her plea colloquy admitting guilt. Movant also states that the complaint was illegal because it was not video-taped or witnessed. Rule 3, Fed.R.Crim.Proc., the rule concerned with complaints, contains no such requirement.

(D) In ground four, claims 3 and 4, Movant states that the order for writ of habeas corpus ad prosequendum, issued on December 19, 2000, prevented her from receiving a speedy trial in the states

8

of Kansas and Oklahoma. Movant claims that the statement by the government, given at her change of plea proceeding, that she had absconded from Oklahoma was incorrect. Movant claims that these pending cases were used to indict her in her federal criminal offense. Movant claims that she was unable to make her court date in Oklahoma, in part due to the habeas corpus ad prosequendum.

As reflected in the record, these statements are factually incorrect. Movant was arrested in Prairie Village, Kansas on April 6, 2000, for intent to distribute narcotics and possession of drug paraphernalia. Movant was charged in Johnson County, Kansas District Court (Case No. 00CR1672). A bench warrant was issued on June 30, 2000, and was still active on May 1, 2002, when Movant was sentenced. On June 7, 2000, Movant was arrested in Beckham County, Oklahoma, and charged with trafficking in controlled substances. On August 9, 2000, the Oklahoma court determined that Movant had absconded and issued a bench warrant for her arrest. This warrant was also active at the time of sentencing. Movant was arrested by the Kansas City, Missouri Police Department's Homicide Unit for these outstanding felony warrants. The complaint in this case was signed on October 30, 2000. Movant's failure to appear in court for her state cases is not due to the writ of habeas corpus ad prosequendum, which was issued more than two months after the bench warrants.

Even if these claims were factually accurate, they would be frivolous. Movant waived her right to challenge the evidence and put the government to the proof of the facts alleged in the indictment when she plead guilty. Further, Movant was not prejudiced by the statements. Detective Seever did not testify during the change of plea or the sentencing hearings. Moreover, the Court did not impose an

9

enhancement based on the statement. Since the statement doesn't implicate Movant's plea or sentence, it is moot.

All of Movant's claims relating to the sufficiency of the evidence are without merit.

Inconsistencies in the Legal Pleadings

In ground one, claim #4, Movant claims that statements in various legal filings related to the case were inconsistent. Movant has not specified which statements were inconsistent and why any perceived inconsistencies implicate her conviction. This claim is without merit.

Sentence Unfair or Harsh

In ground three, claim #4, Movant states that her sentence of 324 months incarceration is almost double that of her co-conspirators. Movant does not state why this implicates her sentence. However, assuming that she is attempting to claim that her sentence is unfair or harsh compared with that of her co-defendants, this claim is without merit.

Movant's criminal case was one of several against more than forty (40) individuals for various narcotics offenses. Many of those individuals received sentences comparable to that imposed upon Movant. This case, however, was early in the investigation. All three of the movant's co-defendants, Melissa A. Zimmerman, Debra G. Haynes and James Francis Fagan, plead guilty and cooperated against their suppliers. Each provided information concerning an extensive narcotics conspiracy, wherein drugs were shipped from Texas to the Kansas City area and distributed. Without the cooperation of these three individuals, the government advises many of the subsequent indictments would not have been filed. As a result of their cooperation, the government filed motions for downward departure on behalf of Movant's co-defendants. Two of the co-defendants, Haynes and

10

Fagan, faced sentences of incarceration similar to Movant and would have received such a sentence had they not provided substantial assistance.[3]  Zimmerman faced a significantly lower sentence under the Sentencing Guidelines, primarily because her criminal history was substantially less than the other defendants.

The Eighth Circuit has long held that the district court is in the best position to determine the appropriate sentence, reviewing sentences only when they exceed the statutory maximum or "the underlying fact in each was a sentence which was greatly excessive under traditional concepts of justice or was manifestly disproportionate to the crime or the criminal." *Woosley v. United States*, 478 F.2d 139, 147 (8th Cir. 1973). *See also United States v. Hawkins*, 601 F.2d 368, 369 (8th Cir. 1979) (refusing to review sentence where the district court did not manifestly or grossly abuse its discretion in sentencing).  In this case, the Court considered Movant's prior criminal history, the significance of the narcotics distribution conspiracy, and the appropriate sentence to deter others who would engage in similar future conduct.  The criminal case was Movant's sixth adult felony conviction.  She was involved in an extensive drug distribution conspiracy.  Movant's sentence is not harsh or disproportionate to her co-defendants, who cooperated by providing detailed, timely and accurate information concerning other persons involved in the conspiracy.  This claim is without merit.

Ineffective Assistance

Movant asserts that she received ineffective assistance of counsel before the district court in ground two of her Section 2255 motion.  She makes numerous individual claims of ineffective

---

[3]Notwithstanding the motion for downward departures, Fagan and Haynes still received custodial sentences of 180 months.

Case 4:05-cv-00075-GAF   Document 26   Filed 08/10/05   Page 11 of 29

assistance as discussed below under A. through L. None of the claims, individually or collectively, meet the established standard of ineffective counsel.

Movant raised a claim of ineffective assistance of counsel during her *pro se* appeal to the Eighth Circuit. The Eighth Circuit summarily affirmed the district court without issuing an opinion. The general rule guiding the Eighth Circuit is to avoid ruling on claims of ineffective assistance of counsel. *See U.S. v. Martin*, 59 F.3d 767, 771 (8th Cir. 1995) ("[ineffective assistance of counsel] is more appropriately raised in collateral proceedings under 28 U.S.C. § 2255 than on direct appeal"); *United States v. Gallegos-Torres*, 841 F.2d 240, 242 (8th Cir. 1988) ("[ineffective assistance of counsel] may not be raised initially on direct appeal of a conviction"). This rule applies except in "exceptional cases where the obvious result would be a plain miscarriage of justice or inconsistent with substantial justice." *Kelley v. Crunk*, 713 F.2d 426, 427 (8th Cir. 1983).

The Supreme Court set out a two-pronged test for constitutionally ineffective assistance of counsel in *Lockhart v. Fretwell*, 506 U.S. 364 (1993). Counsel is constitutionally ineffective when: (1) counsel's representation falls below an objective standard of reasonableness; and (2) the efforts are so prejudicial that the adversarial balance between the defense and prosecution is upset. *Id*. at 369. A court may examine the "prejudice" aspect of a claim without having to first determine whether the representation fell below the objective standard of reasonableness. *McCann v. Armontrout*, 973 F.2d 655, 660 (8th Cir. 1992) (citing *Strickland v. Washington*, 466 U.S. 668, 697 (1984)). It is a defendant's burden to affirmatively prove the prejudice aspect of his claim. *Lawrence v. Armontrout*, 961 F.2d 113, 115 (8th Cir. 1992). The review of counsel's performance is deferential and the presumption is that counsel was competent and effective. *Smith v. Lockhart*, 921 F.2d 154, 156 (8th

12

Cir. 1990). Finally, in order to demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Since Movant plead guilty, she carries an even greater burden with regard to proof of prejudice. Where the collateral challenge is to a plea of guilty rather than a trial verdict, the defendant must show that there is a reasonable probability that, but for counsel's errors, defendant would not have plead guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). "The plea of guilty is a solemn act not to be disregarded because of belated misgivings about [its] wisdom." *United States v. Fitzhugh*, 78 F.3d 1326, 1328 (8th Cir.)(quotation omitted), cert. denied, 519 U.S. 902 (1996). "To allow indiscriminate hearings in federal postconviction proceedings, whether for federal prisoners under 28 U.S.C. § 2255 or state prisoners under 28 U.S.C. §§ 2241-2254, would eliminate the chief virtues of the plea system - speed, economy, and finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977).

During the change of plea hearing, the court conducted a lengthy inquiry into Movant's satisfaction with her attorney. Under oath, Movant stated that she was fully satisfied with the legal representation she received. This statement should not be lightly set aside and "constitute[s] a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge*, at 74. Finally, any claims made by Movant must go beyond mere allegations and must not be so incredulous as to be unbelievable. "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible. *Blackledge*, at 74.

13

A.  Proper Defense

Movant claims that defense counsel would not properly defend her, and makes several general claims concerning legal advice she received from defense counsel, including that Movant would have no chance to win at trial.

As noted previously, Movant confessed on two occasions.  Movant's co-defendants were cooperating with the government, and were prepared to testify at her trial.  It appears that the reasoned defense strategy was to mitigate the custodial sentence of the defendant by seeking a downward departure.   To that end, defense counsel sought a downward departure based on Movant's testimony as a witness in a Jackson County, Missouri murder trial.  Defense counsel secured a letter to the United States Attorney and the Court from the Jackson County Prosecutor detailing Movant's assistance in that murder case.  Defense counsel argued for the departure during the sentencing hearing.

Defense counsel remained a strong advocate for Movant and the adversarial balance between the defense and prosecution was not upset.  Defense counsel was aware of the law, the benefit of the downward departure, and attempted to secure a departure for Movant.  The record shows that defense counsel worked diligently to provide the best defense possible.  Defense counsel challenged Movant's confessions to law enforcement officers, represented Movant during the suppression hearing, and prepared written objections to the final report.

That the Court ultimately rejected the suppression motion and the attempt at a sentencing departure does not mean that either argument or the strategy was unreasonable.  Actions or omissions by counsel that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel.  *Strickland*, at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101).  "The Sixth Amendment

14

does not require for its satisfaction that the actions of counsel result in a favorable outcome. Rather, its requirement is met whenever the accused is supplied counsel who exercises that judgment which might be expected of one trained in the law and committed to the diligent application of its principles. *Taylor v. United States*, 282 F.2d 16, 20 (8th Cir. 1960). See also *Hanger v. United States*, 428 F.2d 746 (8th Cir. 1970) (an error in trial tactics does not give rise to a charge of inadequate assistance of counsel); *Kimmelman v. Morrison*, 477 U.S. 365 (1986) (citing *Strickland*, at 688-89) (defendant bears the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy"). Movant has failed to meet that standard.

Movant fails to provide sufficient details concerning these allegations, but seems to be claiming that her plea was coerced or unwilling. This is contrary to the record in the case. The Court questioned Movant concerning her plea, ensuring it was voluntary and that Movant was aware of the consequences and her rights. Movant stated that her guilty plea was not a product of coercion and was made of her own free will. That statement has a strong presumption of validity and Movant has not made an adequate showing to overcome this presumption. Merely advising a client to plead guilty does not render counsel ineffective. *See Jenkins v. United States*, 466 F.2d 520 (8th Cir. 1972), *aff'g Jenkins v. United States*, 343 F.Supp. 394 (E.D. Mo. 1972) (persuading the petitioner to change his plea from not guilty to guilty by telling petitioner that a jury would convict him does not state grounds that would entitle petitioner to relief under 28 U.S.C. § 2255). This claim is without merit.

B.  Insanity Defense

15

Movant challenges the decision to withdraw the motion for an insanity defense. The record establishes that both of Movant's defense counsel took reasonable steps to explore a defense based on mental competency. Defense counsel were cognizant of Movant's claims of her "mental condition" and sought a competency examination. That examination found that Movant was free of any mental disease or defect rendering her incompetent to stand trial. She discussed her case in detail with the psychologist who examined her. Her thinking was "rational, logical and goal directed," belying any claims of decreased mental capacity. Defense counsel's decision to abandon the insanity defense, without any evidence to support such a defense, is perfectly reasonable.

To succeed in this claim, Movant must provide evidence that defense counsel's actions were below the objective standard of reasonableness. Substantially, the evidence must have been available to defense counsel at the time of the decision and that evidence would make a reasonable jurist question the defense counsel's decision to withdraw the insanity defense. Furthermore, Movant must establish the prejudice aspect, that there is reasonable probability that but for the alleged unprofessional error that the outcome would have been different - probability sufficient enough to undermine the confidence in the outcome." *Strickland*, at 694. *See Weekley v. Jones*, 76 F.3d 1459, 1462 (8th Cir. 1996) (withdraw al of the insanity defense requires a court to determine "whether success with it would have been reasonably probable"). Movant has failed to offer any evidence that calls into question the defense decision or the prejudice suffered from the withdrawal of the defense.

This claim is without merit.

C. Counsel's Communication with Movant

16

Movant claims that defense counsel had minimal communication with her. There is nothing in the record to suggest that the level of communication was deficient. During the change of plea, Movant stated that she was completely satisfied with the representation she had received. Movant never claimed that communication with defense counsel had complete broken down, the standard required for replacement counsel. *See United States v. Swinney*, 970 F.2d 494, 499 (8th Cir. 1992) (to warrant substitute counsel, a defendant must show "a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant"). Indeed, Movant does not make such a claim now, merely that communication was "minimal." She does not offer details concerning any purported breakdown of communication, or adequately offer evidence of the level of communication. Two respected members of the Court's bar represented Movant. The first was forced to withdraw after Movant communicated derogatory comments concerning him directly to the Court. However, even had a breakdown occurred, defense counsel adequately represented Movant and was a strong advocate for her defense. Movant is unable to prove prejudice as to this claim, and any prejudice suffered would be a result of Movant's failure to notify the Court.

Movant also claims that defense counsel was not prepared and had "admitted in court that he wasn't prepared because he came in late on the case." This allegation is not supported by the record. This claim is a broad allegation unsupported by any evidence. These claims are without merit.

Case 4:05-cv-00075-GAF   Document 26   Filed 08/10/05   Page 17 of 29

D.  Kansas City Homicide Detectives as Witnesses

Movant raises the fact that she was a witness to a murder and subsequently testified at trial regarding the murder.  Movant raises this issue again in ground four, claims #5 and #6.  In the first instance, Movant states Mr. Turner failed to contact witnesses, such as Kansas City homicide detectives.  In the second instance, Movant states that the government failed to use evidence from the murder case which would have "removed [her] from the alleged conspiracy at any time" and restates a claim of ineffective assistance against Mr. Turner and Mr. Casad for not using the Kansas City homicide case in her defense.

The dates of the conspiracy charged in the indictment are from June 1, 1999 through November 28, 2000.  The murder in which Movant testified was discovered on March 15, 2000.  Movant didn't testify in the murder case until after the indictment against her was returned.  Movant apparently believes that witnessing one event and giving testimony to that event is exculpatory.  However, the events of one day do not provide an alibi for criminal activity that was ongoing for more than one year - criminal activity confessed to by Movant on two separate occasions to two different law enforcement officers, and ultimately admitted to the Court in her guilty plea colloquy.  Movant's attorneys recognized that being witness to a murder is not exculpatory and does not provide for an alibi defense.  Arguing that witnessing the murder was exculpatory is well beyond the bounds of reason.  Further, Movant has failed to offer evidence of expected exculpatory testimony.

This claim is without merit.

18

E.  Counsel Insisted Movant Plead Guilty to Offenses Charged

As previously addressed, defense counsel's advice to Movant to plead guilty was not ineffective.  Furthermore, Movant acknowledged that her plea was voluntary, of her own free will, and because she was guilty.

F.  Counsel Failed to Challenge Drug Amounts or Length of Conspiracy

Movant claims that Mr. Turner failed to challenge the quantity of the drugs or the length of the conspiracy during sentencing.  Movant claims that the evidence admitted to set the drug quantity was hearsay and based on her confession to Detective Seever.  Movant again raises the fact that there was no video-tape made of the confession.  These claims are without merit.

The length of the conspiracy was alleged in the Indictment and admitted by Movant when she plead guilty to Count I of that indictment.  Furthermore, the length of the conspiracy is not a factor that implicates Movant's guilt or sentence.  Her sentence was not enhanced as a result of the length of the conspiracy.  Even so, Movant's defense counsel did object to any acts alleged before the August 1999 date listed in the Indictment.  The Court stated at sentencing that the conspiracy length did not have an effect on the guidelines.

Regarding the hearsay objection, the standard of evidence for a sentencing hearing is less strict than criminal trials.  While certain rules of evidence apply to trial, it has long been a holding that a sentencing judge may hear any evidence which aids in the formulation of a just sentence.  *See U.S. v. Wise*, 976 F.2d 393, 397 (8th Cir. 1992); citing *Williams v. New York*, 337 U.S. 241 (1949) ("courts in this country . . . practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment");

*Payne v. Tennessee*, 501 U.S. 808, 821 (1991) ("[w]hatever the prevailing sentencing philosophy, the sentencing authority has always been free to consider a wide range of relevant material"); *United States v. York*, 830 F.2d 885, 893 (8th Cir. 1987) ("[a] sentencing judge has broad discretion as to the type of information he may consider, as well as its source"); *see also United States v. Tucker*, 404 U.S. 443, 446 (1972) ("a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come"). This rule is similarly expressed in the statutes. *See* Federal Rule of Evidence 1101(d)(3) (rules of evidence do not apply at sentencing); Title 18 U.S.C. § 3661 ("[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court . . . may receive and consider for the purposes of imposing an appropriate sentence"); U.S.S.G. § 1B1.4 ("[i]n determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character, and conduct of the defendant, unless otherwise prohibited by law").

The allegation that Mr. Turner failed to challenge the drug quantities is directly contradicted by the record in this case. Mr. Turner, in fact, repeatedly challenged the drug quantities. Ultimately, the drug quantity was left to the Court to determine. Mr. Turner objected to the quantity during the sentencing hearing, and cross-examined the witness who testified concerning the drug quantity. As previously noted, Movant objected to the drug quantity in her appeal to the Eighth Circuit. The Eighth Circuit summarily affirmed the district court's decision regarding the drug quantities. If the Eighth Circuit had believed the drug quantities attributed to Movant were in error, they would have a written

opinion to that effect. Since the Eighth Circuit examined the issue, Movant may not relitigate the issue in this motion. *Shabazz*, *supra*.

The drug quantities used for her sentence were not determined solely by her confessions. During direct examination, Probation Officer Grinnell testified that the drug quantities were determined in part from Movant's confessions and in part from the statements of Movant's co-defendants, James Fagan, Cheryl West, and Deborah Haynes. These statements were further corroborated by Fagan's drug ledger, which was seized by law enforcement officers. The drug ledger provided detailed information regarding drug quantities sold in the conspiracy. The source of the information had already been duly brought to the Court's attention. Failure of defense counsel to rehash that testimony, only minutes later, does not fall below the objective standard of reasonableness.

Movant has failed to state how this issue, raised at sentencing, substantially affects her decision to plead guilty. Movant has failed to prove either error on the part of her defense counsel or prejudice as a result. This claim is without merit.

### G. Counsel Informed Movant That She Could Not Change Her Guilty Plea

Movant states that counsel informed her that she could not change her guilty plea. The information concerning the change of plea is accurate – only in rare circumstances, not present in this case, are criminal defendants allowed to withdraw a plea of guilty. Advising a client to that effect is evidence of effective assistance of counsel, not ineffective assistance of counsel. This claim is without merit.

21

H.  Counsel Gave Movant's Witnesses Wrong Time for Sentencing Hearing

Movant alleges that Mr. Turner gave Movant and Movant's witnesses the wrong time for the sentencing hearing.  The record indicates that Mr. Turner believed that the sentencing hearing was scheduled for 10:00 a.m., when it was actually scheduled for earlier that morning.  As a result, the sentencing hearing was held later than earlier scheduled.  Movant has failed to allege any prejudice as a result of this mistake.  Indeed, she had been detained prior to the sentencing hearing, and therefore, was present in the courtroom.  Mr. Turner called a witness during sentencing, and there is no indication from the transcript that Movant's ability to present witnesses was impaired as a result of the mistake.

This claim is without merit.

I.  Counsel Failed to Challenge Movant's Involvement in the Conspiracy

Movant states that defense counsel would not argue that Movant has no control over the actions taken by Fagan, West and Haynes.  This appears to be a challenge to the conspiracy charge - a denial of acts committed by co-defendants despite Movant's involvement in the conspiracy.  However, Movant is ultimately responsible for any actions taken by her co-conspirators.  "If a defendant's participation in a conspiracy has been established, then the defendant is culpable for everything said, written or done by any of the other conspirators in furtherance of the common purpose of the conspiracy.  Even if the defendant joined the conspiracy subsequent to its original formation, he may be held responsible for acts committed by other conspirators in furtherance of the conspiracy before he joined it."  *United States v. Overshon*, 494 F.2d 894, 896 (8th Cir. 1974) (internal citations omitted).  *See also United States v. Coleman*, 349 F.3d 1077 (8th Cir. 2003) (upholding a sentence for five bank robberies in a conspiracy charge, despite the fact that overt acts directly linked defendant to only

22

two bank robberies).  Defense counsel is not ineffective in failing to make an argument contrary to the law.  Despite this, defense counsel did seek to mitigate Movant's involvement in the conspiracy by seeking a reduction for the minor role in the conspiracy - a reduction rejected by the Court.  This claim is without merit.

J.  Counsel Failed to Adequately Cross-Examine Witnesses During Movant's Sentencing Hearing

Movant alleges that defense counsel did not make Probation Officer Grinnell specify where she got her information from or if the statements were video-taped or witnessed.  This claim is identical in substance to matters previously addressed herein and without merit.

K.  Counsel Failed to Present an Argument That Movant Did Not Reside With Co-defendants Haynes and Fagan

Movant states that defense counsel failed to make an argument that Movant did not reside with co-defendants Haynes and Fagan.  This argument is contradicted by the record of the sentencing hearing in this case.  Defense counsel did object to that fact in the PSR.  The Court did not rule on the objection because it failed to impact the sentencing.  Movant's physical residence is not a factor in her guilty plea, her sentence, or an element of the offense.  Movant is unable to prove prejudice from this claim.  This claim is without merit.

L.  Counsel Promised Jackson County Prosecutor Phil Levota Would Appear at Movant's Sentencing Hearing

Movant claims that defense counsel stated that Phil Levota would be at the sentencing in person to explain "the actual truth."  Even if true, this claim does not substantially affect the outcome of this case.  Defense counsel, the government, and the Court were in possession of a letter from Mr. Levota

Case 4:05-cv-00075-GAF   Document 26   Filed 08/10/05   Page 23 of 29

which detailed Movant's assistance in a murder trial in Jackson County, Missouri. Movant has failed to state prejudice as a result of this claim. The physical presence of Mr. Levota during the sentencing hearing would not have changed the outcome of the sentencing, when the Court had already received and duly considered his uncontested statements. Ultimately, the Court rejected the downward departure because Movant had failed to cooperate fully in the federal charges pending against her and her co-conspirators. There was no dispute that Movant cooperated in the Jackson County murder trial.

This claim is without merit.

Movant has failed to show how defense counsel's actions fell below the objective standard of reasonableness. To the contrary, the record establishes that the defense counsel acted in a reasonable and professional manner and was a strong advocate for Movant. Movant has failed to demonstrate prejudice - that the alleged unprofessional errors by defense counsel substantially affected the results of the sentencing of Movant's decision to plead guilty.

<u>Mental Condition</u>

Next, movant makes several claims relating to her self-styled "mental condition." In Ground Three, Movant states that the Court failed to recognize this "mental condition" prior to the offense and sentencing. Movant also states that the Court ignored that movant suffered from post traumatic stress disorder. She further offers medical records detailing an arachnoid cyst. Movant also states that the competency examination was influenced by her pending testimony in a criminal case. She states that her illness puts her "competency" in question. She further states that the Court committed error when it accepted her plea, knowing that she was being treated for post traumatic stress disorder and taking a

24

number of prescription drugs. Finally, she states that she was traumatized by the prosecution, by her pretrial detention, and the upcoming murder trial.

The test for determining competency is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding. . . and whether he has a rational as well as a factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960). "[T]he issue in a substantive competency claim is whether the defendant was in fact competent to stand trial, but the issue in a procedural competency claim is whether the trial court should have conducted a competency hearing." *Vogt v. United States*, 88 F.3d 587, 590-91 (8th Cir. 1996), citing *United States v. Day*, 949 F.2d 973, 982 (8th Cir. 1991). "A denial of either of these rights may provide the basis for habeas relief." *Wiesberg v. Minnesota*, 29 F.3d 1271, 1276 (8th Cir. 1994). Movant is making a substantive claim regarding her competency by claiming that she was mentally incompetent at the time of her guilty plea and sentencing.

"The burden of persuasion was on petitioner to show that he was incompetent by a preponderance of the evidence." *Vogt*, at 591. It is not enough for Movant to simply state that she was suffering mental or emotional problems at the time of her guilty plea or sentencing. *See Tweedy v. United States*, 435 F.2d 702, 703 (8th Cir. 1970) ("[b]eing a chronic alcoholic does not equate with being incompetent to plead guilty") citing *Crawn v. United States*, 254 F. Supp. 669 (M.D. Pa. 1966) ("[t]hat there may be something mentally wrong with a defendant or that he may be emotionally unstable does not necessarily render him mentally incompetent to understand the proceedings against him").

The Court, alerted by defense counsel to the question of Movant's competency, ordered a competency examination during the pretrial stage. The psychiatric evaluation stated that Movant gave

Case 4:05-cv-00075-GAF   Document 26   Filed 08/10/05   Page 25 of 29

"every indication that she possesses an adequate understanding of the nature and possible

consequences of the charges against her, and she is capable of assisting in her own defense."  Movant

has offered no new evidence which contradicts this diagnosis.  She has not offered affidavits of expert

medical testimony or records of psychiatric examination implicating the earlier decision by the Court.

The burden is on Movant to prove that the court erred when it found her competent to stand trial, or

that the original competency determination is unsupported by the record.  Movant has done neither.

Movant's claims of mental incompetency revolve around the diagnosis of post traumatic stress

disorder (PTSD), a condition contemplated in her original competency examination.  Movant was

found competent, despite being diagnosed as suffering from PTSD.  The Court was aware of this

diagnosis.  Movant tendered a lengthy plea colloquy.  In that statement, she notified the Court that she

was taking drugs for treatment of post traumatic stress disorder.  However, she also stated that she was

not mentally confused and that her mind was clear.  The competency examination did not state that the

prescribed medications would substantially affect Movant's competency, and Movant has offered no

evidence related to the medications.  Taking prescribed medication does not automatically make

Movant incompetent to stand trial.  *See Sheley v. Singletary*, 955 F.2d 1434, 1438 (11th Cir. 1992)

("[t]he treatment with anti-psychotic drugs does not *per se* render a defendant incompetent to stand

trial").

Movant also argues "new evidence" in the form of medical records discussing an arachnoid

cyst.  Movant offers four pages of medical records related to the removal of the arachnoid cyst.

According to those medical records, the cyst was first identified in 1982.  Those records do not make a

statement concerning Movant's competency or implicate the earlier Court decision.  Since the

arachnoid cyst was present during the psychiatric examination, any effect on Movant's competency would have been discovered and reported during that examination - a strong indicator that the cyst did not substantially affect Movant's competency.

Movant has not met her burden of proof in this challenge to the Court's original decision. In cases such as these, where the movant offers no new evidence, and where the Court conducted a thorough plea waiver pursuant to Rule 11, the Court's original finding is given strong deference. *See United States v. Smallwood*, 536 F.2d 1257, 1258-1259 (8th Cir. 1976) (upholding guilty plea despite claims of incompetency because of the Court's proper plea waiver pursuant to Rule 11 of the Federal Rules of Criminal Procedure); *United States v. General*, 278 F.3d 389 (4th Cir. 2002) (not finding any reasonable cause to question competency at the time of his guilty plea hearing).

In addition, the issue of competency has already been raised by the movant in her appeal and decided to her detriment - once in regard to her attorney's representation and once in regard to the suppression of her statements. The Eighth Circuit summarily affirmed the ruling of the district court. Once again, *Shabazz* is binding, in that "claims which were raised and decided on direct appeal cannot be relitigated" in this motion.

These claims have already been decided by the Eighth Circuit and are without merit.

Booker

On January 12, 2005, the Supreme Court issued a decision in *United States v. Booker*, 125 S.Ct. 738 (2005), making the federal Sentencing Guidelines advisory. The Supreme Court clearly and unequivocally made *Booker* applicable to all cases "pending on direct review or not yet final" as of January 12, 2005. See *Booker*, at 769, citing *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). A

27

case is "final" when "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *Griffith*, 479 U.S. at 321 n.6. The Eighth Circuit has held that *Booker* does not apply to criminal convictions that became final such as Movant's, before *Booker* was decided. *Never Misses A Shot v. U.S.*, 413 F.3d 781, 783 (8th Cir. 2005). *Booker*, therefore, does not benefit movants in collateral proceedings. *Id*.

Certificate of Appealability

Movant must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability on these issues. *See Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 525 U.S. 834 (1998). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, at 569. Movant fails to make such a showing, therefore, the issuance of a certificate of appealability is denied.

WHEREFORE, for the reasons stated herein, petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to Title 28, United States Code, Section 2255, is denied.

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

DATED:    August 10, 2005